## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

KIMBERLY BEEN,

       Plaintiff,

v.                                        Case No. 6:09-cv-00726 MV/WDS

NEW MEXICO DEPARTMENT OF
INFORMATION TECHNOLOGY ("DoIT"), et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Supplemental Brief on Defendants' Motion for Partial Judgment on the Pleadings [Doc. 120], Defendants' Motion for Summary Judgment as to DoIT [Doc. 95], Plaintiff's Motion for Partial Summary Judgment on Count IV [Doc. 93], Defendants' Motion for Summary Judgment as to Individual Defendants Pearl Rudolph, Elise Storie, Michael Martinez and Gloria Lucero [Doc. 97], Plaintiff's Motion to Strike [Doc. 106], and Plaintiff's Motion for Sanctions Against Defendants for Discovery Abuse [Doc. 89]. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that: Defendant' Motion for Partial Judgment on the Pleadings is well-taken and will be **GRANTED**; Defendants' Motion for Summary Judgement as to DoIT is not well-taken and will be **DENIED**; Plaintiff's Motion for Partial Summary Judgment on Count IV is not well-taken and will be **DENIED**; Defendants' Motion for Summary Judgment as to Individual Defendants Pearl Rudolph, Elise Storie, Michael Martinez and Gloria Lucero is well-taken in part and will be **GRANTED in part** and **DENIED in part**; Plaintiff's Motion to Strike will be **DENIED as moot**; and Plaintiff's Motion for Sanctions Against Defendants for Discovery Abuse is not well-taken and will be **DENIED.**

## BACKGROUND

In or about January 2007, Plaintiff was a non-probationary employee of the Child Support Division of the New Mexico Human Services Department ("HSD").  Doc. 96 at 4.  Also in or about January 2007, Plaintiff interviewed for, and was offered a job with the New Mexico General Services Department ("GSD").  A GSD Form 1-Personnel Action Request ("PAR") was approved and dated January 31, 2007, indicating that Plaintiff would be "transferring" from HSD to GSD.  Doc. 105, Ex. 2.  The "effective date of the request" is typed into the PAR as February 10, 2007, but that date is crossed out and changed by hand to February 24, 2007.  *Id.*

Plaintiff accepted the job offer with GSD, and thereafter, on February 7, 2007, submitted a written notice of resignation from HSD, stating as follows: "This memo is to inform you that I am resigning my position with the Child Support Enforcement Division.  My last day will be February 14, 2007."  Doc 96, Ex. D (emphasis in original).  Plaintiff's first day at GSD was February 26, 2007, although her employment with GSD became effective February 24, 2007.  Doc 96 at 4.  When she was hired by GSD, Plaintiff was not provided with or asked to sign a form acknowledging the terms and conditions of her appointment.  Doc. 105, Ex. 1 at ¶ 3.

Plaintiff's supervisor at GSD, Kelly Mentzer, believed that Plaintiff was a transfer, non-probationary employee, and treated her accordingly.  Doc. 105, Ex. 3 at 58-60.  On or about March 2, 2007, Gloria Lucero, a GSD Human Resource Specialist, sent an email message to Donna Lopez at HSD asking her to process the action of Plaintiff's "Transfer/Reduction in Band" from HSD to GSD.  Doc. 96, Ex. F.  Lopez sent Lucero a response stating that this action would have to be processed as a rehire, as Plaintiff terminated with HSD effective February 15, 2007.  *Id.*  Lucero then sent an email to David Berry at the New Mexico State Personnel Office and asked him to enter the "rehire of former HSD employee Kimberly Bowen" as soon as

2

possible.  *Id.*

On July 1, 2007, DoIT was created, and, effective that day, Plaintiff transferred from GSD to DoIT.  Doc. 96 at 5.  Initially upon the transfer, Plaintiff continued to be supervised by Mentzer.  Doc. 94, Ex. A at ¶ 5.  In mid-July 2007, Plaintiff was reassigned to Deputy Cabinet Secretary Elisa Storie's area to assist her while another employee was out on leave under the Family Medical Leave Act ("FMLA").  *Id.* at ¶ 6.  For the remainder of her employment at DoIT, Plaintiff reported to Storie and Michael Martinez, Director of the CNA Division[1] of DoIT.  *Id.* at ¶ 7.

On or about July 27, 2007, Plaintiff learned that she was pregnant and told both Storie and Martinez.  Doc. 105 at 9.  Almost immediately, she began to experience pregnancy-related complications, including nausea, vomiting, acid reflux and bleeding.  *Id.*  On August 9, 2007, Plaintiff requested from Pearl Rudolph, Human Resources Bureau Chief for DoIT, the forms necessary to apply for FMLA leave.  Doc. 94 at 5.  Later that same day, Rudolph sent Plaintiff a medical certification form via email mail.  *Id.* at 5.  DoIT did not provide any other documentation or information to Plaintiff in connection with the requirements for FMLA benefits.  *Id.*

On August 10, 2007, Plaintiff sent Martinez an email message stating, "I have an appointment with my doctor again this morning at 9:00 a.m.  I will fax my FMLA leave papers today or drop them off depending on how I feel."  *Id.*, Ex. I.  On August 13, 2007, Plaintiff sent Martinez another email message stating, "I am still really sick . . . I did get my FMLA leave form filled out by Dr. Brown on Friday." Doc. 94, Ex. J.  On August 21, 2007, Plaintiff sent

---

[1]The parties have not provided a definition for this acronym.

Martinez and Storie an email message, stating, "I am going to the Emergency Room this morning . . . Please e-mail or call me with the fax number for HR.  I can fax over my FMLA forms and Doctor's excuse."  Doc. 94, Ex. K.   After Martinez sent her the fax number, Plaintiff sent another email message thanking him for the fax number to HR, and asking, "If I fax my FMLA leave papers is it possible that I can get some time for my leave?"  *Id.*

Plaintiff had submitted the FMLA medical certification form to her obstetrician, Dr. William Brown, on August 10, 2007, the day after she received it from Rudolph.  Doc. 94, Ex. A at ¶ 16.  Shortly after Dr. Brown's office returned the completed form to her, however, she realized that they had completed the form to certify Plaintiff's need for leave for delivery of the baby the following spring, rather than her immediate need for leave due to her current pregnancy complications.  *Id.*  Accordingly, Plaintiff submitted a second, blank form to Dr. Brown's office for completion.  When she asked about the status of the form, Dr. Brown's office advised that they were very busy and that the individual responsible for completing such forms was out on vacation.  *Id.*

Plaintiff was absent from work from August 1, 2007 through August 28, 2007.  Doc. 96 at 5.  The "Leave Request and Approval Policy" set forth in the GSD Administrative Manual then in effect at DoIT provides in relevant part:

> Employees must request any and all types of leave in advance.  Sick leave for unanticipated medical condition or illness must be reported by an employee to his/her immediate supervisor or designee within established time frames but, in any event, no later than one-half hour after the start of the work day unless there are circumstances that prevent the notification (i.e. car accident).
>
> Employees must indicate how long they will be absent so that work assignments can be planned.  Employees, who are not on approved leave, must call in each day they are absent, **unless otherwise authorized by their supervisor**.  Supervisors or their designee must approve or disapprove all request for leave.  Any unapproved absence is considered absence without leave and just cause for which

disciplinary action may be taken.

Doc. 96, Ex. P (emphasis in original).  Additionally, the "Code of Conduct" set forth in the same

Manual provides: "AWOL: Employees absent without leave for five consecutive days are

considered to have abandoned their jobs and are subject to dismissal in accordance with

Department policy and SPB rules."   Doc. 111, attachment to Ex. A.

According to Defendants, Plaintiff sporadically called or emailed during her absence, but

did not call in on a timely basis or receive approval for all of her absences as required by these

policies, and thus was absent without leave, or "AWOL."  Doc. 96 at 5-7, Ex. E at ¶ 4.  On the

other hand, Plaintiff contends that she complied with the relevant policies during her absence by

calling and/or emailing one or more of her supervisors on a regular basis.  Specifically, Plaintiff

states:

> During August 2007, I emailed, and used cell phones and land lines to call in sick to my supervisors, Elisa Storie and Michael Martinez and did this to cover every single day I was away from the office.  I made calls or sent emails early in the morning within a half hour or so of the work start time.  I told them I was very sick and could not come to work and tried to describe how I was feeling the best I could.  I would try to come in, but would become violently ill and was unable [to] make it in.  Ms. Storie and Mr. Martinez never told me that I was not following the correct call-in process or that the information I gave them was not complete.  I thought that I was to be on approved leave status.  No one told me or sent a letter to me telling me otherwise.
>
> Ms. Storie and Mr. Martinez never told me that I was being placed on AWOL or that my job was at risk.  They never called me or sent an email asking for additional information about my health.  I never failed to contact them, email or leave messages for five consecutive days.

Doc. 105, Ex. 1 at ¶¶ 7-8.  Cell phone records for August 2007 document some telephone calls to

DoIT.  Doc. 94, attachment to Ex. A.  In an email to Rudolph on August 27, 2007, Storie

reported, "Kim did contact me via phone one day and sent me e-mails and a couple of voice

mails.  I did not keep track of the dates."  Doc. 94, Ex. L.

5

Rudolph sent Plaintiff a Notice of Termination letter, which is dated August 28, 2007 but indicates that the termination is effective as of August 31, 2007.  Specifically, the letter states:

> Due to your extended, unauthorized absence from your job as Administrative Support staff person in the CNA Division of the Department of Information Technology (DoIT), your actions are considered "abandonment of job."  Pursuant to 1.7.11.11 NMAC, you are dismissed from employment at the DoIT effective Friday, August 31, 2007.
>
> As a probationary employee, you may not appeal this action to the State Personnel Board.

Doc. 94, Ex. M.

On August 31, 2007, before receiving the Notice of Termination, Plaintiff contacted Rudolph from the emergency room to let her know that she was experiencing heavy bleeding and might lose her baby (which, tragically, she did).  Doc 94, Ex. A at ¶ 18.  During that conversation, Rudolph advised Plaintiff that she was on probation and that she had been terminated.  *Id.* at ¶ 19, Doc. 94, Ex. B at 207.

Later that same day, at approximately 2:00 p.m., Dr. Brown's office faxed a completed medical certification form to Rudolph with a handwritten cover sheet stating:

> Please forgive the handwritten note.  Kim brought me FMLA paperwork on either 8-7-07 or 8-9-07.  I did not get to it until 8-10-07.  I assumed this was in preparation for when she has the baby, so that is how I filled it out.  I now understand that she needs it for her current illness.  At this moment, she is in the ER, and Dr. Brown is waiting until the ER informs us of the situation to give me medical details.  I'll forward the new paperwork then.  Attached is the FMLA I've done.

Doc. 94, Ex. P.

Two hours later, at 4:04 p.m., Dr. Brown's office faxed a second completed form to Rudolph certifying Plaintiff was suffering from a serious medical condition including "persistent nausea and vomiting, acid reflux, abd. pain, slight bleeding," that the duration was "through

pregnancy," and that she should be approved for FMLA leave starting on July 20, 2007 "through extent of FMLA benefit."  Doc. 94, Ex. Q.  According to Rudolph, because the second form was received at 4:04 p.m. and Plaintiff's hours were from 7:00 a.m. to 4:00 p.m., and because Plaintiff was being terminated for abandonment of job, DoIT took no action on Plaintiff's FMLA request.  Doc. 105, Ex. B. at 296-97.

Following Plaintiff's termination, her job was filled by a non-pregnant employee.  Doc. 110, Ex. E at 81-82.

In or about June 2009, Plaintiff commenced the instant action against DoIT and Rudolph, Storie, Martinez and Lucero (collectively, the "Individual Defendants").  Plaintiff's Second Amended Complaint contains four counts against DoIT, two alleging gender/pregnancy discrimination in violation of Title VII and the New Mexico Human Rights Act, one alleging violation of the FMLA by interference with Plaintiff's attempt to exercise her FMLA rights and by retaliation against her for seeking FMLA leave, and one alleging breach of implied contract and implied covenant of good faith and fair dealing by failure to provide Plaintiff with progressive discipline or with notice and an opportunity to be heard prior to her termination.  Doc. 64.  Additionally, the Second Amended Complaint contains two counts alleging violations by the Individual Defendants of Plaintiff's constitutional rights pursuant to 42 U.S.C. Section 1983.  *Id.*  Defendants now move for summary judgment on Plaintiff's gender/pregnancy discrimination claims, her FMLA claims, and the Section 1983 claims, and for judgment on the pleadings on her contract claims.  Plaintiff moves for summary judgment on her claim of interference under the FMLA, and also moves to strike certain evidence from the record and for sanctions against Defendants for discovery abuse.

7

**DISCUSSION**

I.     Defendants' Supplemental Briefing On Their Motion for Judgment on the Pleadings As
       to Plaintiff's Contract Claims

Previously, Defendants filed a Motion for Partial Judgment on the Pleadings, in which

they moved, *inter alia*, to dismiss Count V of the Second Amended Complaint, which alleges

that DoIT breached an implied contract and the implied covenant of good faith and fair dealing.

Doc. 76.  In a Memorandum Opinion and Order, the Court found that Plaintiff's allegations

sufficiently allege an implied employment contract such that governmental immunity is waived

pursuant to NMSA 1978, Section 37-1-23(A).  Doc. 119 at 7.  On that basis, the Court denied

Defendants' motion to dismiss Plaintiff's claims of breach of implied contract and breach of the

implied covenant of good faith and fair dealing.  *Id.* at 8-9.  The Court, however, issued its

decision without prejudice to a subsequent motion addressing whether Plaintiff had failed

properly to exhaust her administrative remedies before filing suit in this Court because she did

not first appeal her termination to the State Personnel Board (the "Board").  *Id.* at 8.

Defendants have now filed a supplemental brief in support of their previous motion for

partial judgment on the pleadings.  Doc. 120.  Defendants make two arguments: (1) Plaintiff's

contract claims are, in effect, a claim for wrongful discharge, which fails whether Plaintiff was a

probationary employee or a non-probationary employee; and (2) Plaintiff's contract claims are

barred because she failed to exhaust her administrative remedies under the Act.  Plaintiff filed a

response in opposition, arguing that because Defendants denied her a right to appeal her

termination decision to the Board, by their own actions, they prevented her from pursuing an

administrative remedy, and thus she had no administrative remedy to exhaust.

8

A.      Legal Standard

The same standards that govern a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure also govern a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

B.      Plaintiff's Employment Status at the Time of Her Termination

The disposition of Defendants' motion for judgment on the pleadings as to Plaintiff's contract claims depends in part on Plaintiff's employment status at the time of her termination. The parties disagree as to whether the facts establish that Plaintiff was a probationary or a non-probationary employee at the time of her termination from DoIT. Defendants argue that, under the plain language of the State Personnel Administration Rules (the "Rules"), codified at 1.7.1 NMAC, Plaintiff was a probationary employee. Plaintiff argues that, regardless of the Rules, she had an implied contract of employment with GSD, and subsequently with DoIT, as a non-probationary employee, based on paperwork processed by GSD and conduct and representations of individuals at GSD when she first transferred from HSD.

The New Mexico Personnel Act (the "Act") "governs the rights and obligations of all state employees, with certain exceptions." *Clark v. N.M. Children, Youth and Families Dep't*, 1999-NMCA-114, ¶ 8, 128 N.M. 18, 988 P.2d 888. The Act authorizes the Board to promulgate rules and regulations to effectuate the Act's provisions. *Id.*; NMSA 1978, § 10-9-10(A). Pursuant to this statutory authority, the Board issued the Rules, set forth at 1.7.1 NMAC. The

Rules have the force of law.  *See City of Albuquerque v. N.M. Public Regulation Comm'n*, 2003-NMSC-028, ¶¶ 16-17, 134 N.M. 472, 79 P.3d 297 ("[W]here an agency has the authority to act, its rules and regulations have the binding effect of statutes.").

Pursuant to the Rules, an employee is a "probationer" if she "has not completed the one-year probationary period."  1.7.1.7(CC) NMAC.  Completion of a one-year probationary period "is required of all employees unless otherwise provided for by these rules."  1.7.2.8(A) NMAC.  The Rules specifically address the situation where an employee leaves the classified service and subsequently returns, providing that "[a] break in employment of at least one work day will require an employee to serve another probationary period upon rehire into the classified service," with certain exceptions that do not apply here.  1.7.2.8(C) NMAC.  The Rules define a "break in employment" as "any period of separation of at least one workday of not being in the classified service."  1.7.1.7(E) NMAC.  The Rules also distinguish between a "resignation," defined as "the voluntary separation of an employee from the classified service," and a "transfer," defined as "the movement of an employee from one position to another in the same pay band without a break in employment."  1.7.1.7(GG), (KK) NMAC.

Here, Plaintiff's last day at HSD was February 14, 2007.  Her employment with GSD did not become effective until February 24, 2007.  Accordingly, Plaintiff had a separation of at least one workday of not being in the classified service.  Her move from HSD to GSD thus was not a "transfer" as that term is defined in the Rules.  Moreover, the 10-day break in her employment with the classified service required that she serve another probationary period upon commencement of her position at GSD.  Accordingly, when Plaintiff was terminated on August 31, 2007, she was a probationer within the meaning of the Rules.

Plaintiff does not dispute this conclusion, but argues that she nonetheless should be

considered a "transfer" non-probationary employee for two independent reasons: (1) Plaintiff was hired by GSD "effective" January 31, 2007, before she resigned her employment with HSD, and thus there was no break in employment; and (2) GSD made a binding offer to hire Plaintiff as a transfer employee, thereby creating an implied contract that "trumps" the Rules. *See* Doc. 107 at 10-12. The Court is not persuaded by either argument.

First, the evidence cited by Plaintiff does not demonstrate that she was hired as a transferee effective January 31, 2007. Although Plaintiff interviewed for and was offered the GSD job in January, and the PAR requesting approval for her transfer from HSD to GSD was approved and dated January 31, 2007, there is no indication in the PAR or elsewhere that Plaintiff's employment with GSD was to be "effective" as of January 31, 2007. To the contrary, Plaintiff's notice of resignation makes clear that her employment with HSD continued through February 14, 2007, thus making it impossible for her to have been employed with GSD effective January 31, 2007. Further, Plaintiff concedes that her first day at GSD was February 26, 2007. The dates of the offer, acceptance and approval of Plaintiff's employment with GSD are not determinative of the effective date of that employment, which was February 24, 2007, ten days after her last day of employment with HSD.

Second, because the Rules unequivocally require an employee who, like Plaintiff, has had a break in employment of at least one day to serve a probationary term upon rehire, neither Mentzer, Lucero or anyone else at GSD had the authority to bind Defendants to an implied contract with Plaintiff as a transfer, non-probationary employee. "Neither defendants nor the courts may create an exception at odds with an express statutory requirement."[2] *Franks v.*

---

[2]As noted above, as properly promulgated regulations, the Rules have the same binding effect as statutes.

*Nimmo*, 796 F.2d 1230, 1235 (10th Cir. 1986). New Mexico law is clear on this point. In

*Trujillo v. Gonzales*, 106 N.M. 620, 747 P.2d 915 (1987), although the relevant statutory

authority provided that no action of any commission was valid unless taken at a meeting held in

accordance with the Open Meetings Act, two Taos County commissioners orally promised the

plaintiff employment as Taos County Road Superintendent for a guaranteed period of two years.

Based on that promise, the plaintiff accepted and voluntarily terminated his employment with the

State. Thereafter, the plaintiff's employment was ratified at a meeting of the Board of County

Commissioners as an employee at will, with no guaranteed term. When the plaintiff was

terminated less than two years later, he brought a breach of contract action against the

commissioners. The New Mexico Supreme Court affirmed the dismissal of the plaintiff's claim,

holding that "the action of the two commissioners extending an offer of a two-year employment

to Trujillo was without statutory authority and, thus, not a valid act capable of binding the

county." *Id.* at 621, 747 P.2d at 916. Further, the Court noted that "a contract unlawfully

entered into, though in good faith, creates no liability on the part of the body politic to pay for it,

even in quantum merit for goods furnished or labor performed." *Id.* at 622, 747 P.2d at 917.

The Court also rejected the plaintiff's alternative argument that the defendants were estopped

from denying the existence of a valid two-year employment agreement and asserting the statute

to deny contractual liability, finding "no merit to Trujillo's equitable argument because the

language of the applicable statute is clear. Trujillo had no right to rely on the oral

representations made to him here." *Id.*; *see also Campos de Suenos, Ltd. v. County of Bernalillo*,

2001-NMCA-043, ¶ 31, 130 N.M. 563, 28 P.3d 1104 ("Political officials and public officers are

limited in their authority to bind governmental entities, and the general public is charged with

notice of their limitations."); *Silva v. Town of Springer*, 1996-NMCA-022, ¶ 10-12, 121 N.M.

12

428, 912 P.2d 304 (rejecting plaintiff's argument that even if her position were exempt under the personnel merit ordinance, the town was estopped from raising that defense because, prior to accepting her appointment, she was assured by the former town administrator and several members of the town council that she would be accorded the protections of the ordinance).

While not unsympathetic to Plaintiff's argument, this Court is constrained to follow this precedent. Neither the paperwork processed by GSD in January nor any representations made to Plaintiff during the hiring process were capable of binding Defendants to an implied contract that would allow Plaintiff to avoid the probationary period required by the Rules. Even if Lucero, Mentzer and other GSD personnel believed that Plaintiff was to be a non-probationary employee, they had no authority to change the terms of her employment to conflict with express regulatory requirements. Further, Plaintiff's reliance on representations by individuals at GSD in resigning her position with HSD[3] cannot estop Defendants from asserting the Rules to deny the existence of an implied contract, as Plaintiff was not entitled to rely on representations at odds with the clear language of the applicable Rules. Accordingly, because Plaintiff had only been employed at GSD/DoIT for seven months, she was a probationer on August 31, 2007, the effective date of her termination.

---

[3]In support of her argument, Plaintiff cites not only to representations made before she commenced working at GSD, but also to Mentzer's treatment of her as a non-probationary employee at GSD, and the failure of GSD to provide her with a form acknowledging the terms and conditions of her appointment, as required by the Rules. *See* 1.7.2.14 NMAC. Only actions that occurred before Plaintiff decided to resign from HSD and upon which she relied in deciding to resign, however, would be relevant to her estoppel claim, if such a claim were cognizable. *See Franks*, 796 F.2d at 1236. The Court agrees that the failure to provide her with the required form is in and of itself a violation of the Rules, and suggests negligence on the part of GSD. There is, however, nothing in the Rules that suggests that such a failure provides a basis for her claim that she was not a probationer at GSD.

C.     Administrative Remedies

Under the Rules, unlike an employee in "career" status who has completed her probationary term, a probationer has no right to notice and an opportunity to be heard prior to her termination, and no right of an appeal to the Board after her termination. *See Clark*, 1999-NMCA-114, ¶22. Rather, a probationer "may be suspended, demoted, or dismissed effective immediately with written notice and without right of appeal to the board." 1.7.11.11 NMAC. Defendants acknowledged this when they cited 1.7.11.11 NMAC in Plaintiff's Notice of Termination, and specifically noted that "as a probationary employee, [she] may not appeal this action to the State Personnel Board." Accordingly, Plaintiff is correct that she had no administrative remedy to exhaust before filing her contract claims with this Court.

D.     Contract Claims

The Court's determination that Plaintiff was a probationer at the time of her termination is fatal to her contract claims. In Count V, Plaintiff alleges that the conduct and representations of GSD personnel bound Defendants to an implied contract of employment with Plaintiff as a non-probationary employee. Doc. 64 at ¶ 53. Plaintiff further alleges that by failing to provide her progressive discipline or notice and an opportunity to be heard prior to her termination, *i.e.,* the rights afforded non-probationary State employees, they breached this implied contract and violated the implied covenant of good faith and fair dealing inherent in all contracts. *Id.* at ¶ 54.

As this Court determined above, no one at GSD had the authority to bind Defendants to an implied contract with Plaintiff as a non-probationary employee. Neither representations made by GSD personnel to Plaintiff nor her reliance on those representations altered her status at GSD and, subsequently, at DoIT, as a probationer under the Rules. As a matter of law, Plaintiff had no implied contract as a non-probationary employee. Accordingly, Plaintiff's allegations that

14

Defendants failed to afford her progressive discipline or notice and an opportunity to be heard prior to her termination fail to state a claim of breach of implied contract or breach of the implied covenant of good faith. Plaintiff was dismissed properly, if callously, in accordance with the Rules governing the termination of probationers. 1.7.11.11 NMAC. Accordingly, Count V of the Second Amended Complaint must be dismissed.

II.       The Parties' Summary Judgment Motions

     A.       Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show

there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp. at 1281.

 B. <u>Plaintiff's Gender/Pregnancy Discrimination Claims Against DoIT</u>

 In Count I, Plaintiff alleges that DoIT discriminated against her on the basis of gender/pregnancy, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-5 *et seq*. Specifically, Plaintiff claims that her pregnancy was a "motivating factor" in DoIT's decision to terminate her. Doc. 64 ¶ 32. Similarly, in Count II, Plaintiff alleges that DoIT discriminated against her based on gender/pregnancy in connection with terminating her employment and denying her appropriate leave, in violation of the New Mexico Human Rights Act ("NMHRA"), NMSA 1978, Section 28-1-7 *et seq*. *Id.* at ¶ 36. Defendants move for summary judgment on both of these counts, arguing that Plaintiff cannot establish a prima facie case of discrimination and, even if she were able to establish a prima facie case, DoIT terminated her for legitimate, non-discriminatory reasons.[4]

---

 [4]The parties address the Title VII and NMHRA claims together. This Court will do the same, as Plaintiff's claims under both the federal statute and the state statute are based on the same conduct, and the Title VII burden-shifting methodology described below applies to claims brought under the NMHRA. *See Juneau v. Intel Corp.*, 139 N.M. 12, 15, 127 P.3d 548, 551

"[A] pregnancy discrimination claim is analyzed the same as other Title VII claims." *Atchley v. Nordam Group. Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999). Accordingly, the Court follows the three stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* First, "the plaintiff must prove a prima facie case of discrimination." *Atchley*, 180 F.3d at 1148. Specifically, under Tenth Circuit law, she must show that: "(1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee." *Id.* The plaintiff's burden at the first stage is "not onerous." *McGowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001). It is "one of production, not persuasion; it can involve no credibility assessment." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). If the plaintiff makes a prima facie showing of discrimination, the burden of production shifts to the defendant to "articulate[] a legitimate, nondiscriminatory reason for its action." *Atchley*, 180 F.3d at 1148. If the defendant meets this burden, "[a]t the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's preferred reason for the challenged action is pretextual – i.e. unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995); *see also Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008) ("To defeat . . . summary judgment, the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proferred reasons were unworthy of belief."). "If the plaintiff succeeds both in making out a prima facie case of discrimination and in showing that defendant's reasons are pretextual, plaintiff's claim will withstand summary judgment." *Dodd v. Riverside Health Sys., Inc.*, 76 F.3d 392, 1996 WL

---

(2005).

17

29246, *2 (10th Cir. Jan. 25, 1996).

In arguing that Plaintiff cannot prove a prima facie case of discrimination, Defendants misstate the elements of a prima facie case of pregnancy discrimination as requiring that a plaintiff show "disparate treatment among similarly situated individuals." Doc. 96 at 10. According to Defendants, "Plaintiff has not alleged, and cannot demonstrate, that she was treated differently than any male and/or nonpregnant DoIT probationary employees who were AWOL for extended periods." *Id.* The Court agrees that Plaintiff has failed to show that Defendants treated similarly situated individuals who were not pregnant more favorably than they treated Plaintiff, as the individuals to whom Plaintiff refers were not probationary employees, and thus were not similarly situated to Plaintiff. *Hernandez v. Potter*, 371 Fed. App'x 896, 900, 2010 WL 1225833, **3 (10th Cir. Mar. 31, 2010); *see also Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."). The Tenth Circuit, however, has squarely held that such "comparison evidence" is not necessary to establish a prima facie case. *Dodd*, 1996 WL 29246, *2 n.3. Rather, for the fourth prong of the test, a plaintiff need only show that her position remained open and was ultimately filled by a non-pregnant employee. *Id.* at *2.

Plaintiff has shown all of the elements necessary to prove a prima facie case of pregnancy discrimination. First, as Defendants concede, Plaintiff belongs to the protected class. Second, although Defendants do not address whether Plaintiff was doing satisfactory work, they do not claim to have fired her for unsatisfactory work, and have presented no evidence to suggest that her work was anything other than satisfactory. Third, there is no dispute that Plaintiff was terminated. Fourth, although Defendants do not address whether Plaintiff's position remained

open and was ultimately filled by a nonpregnant employee, the undisputed evidence demonstrates that Plaintiff's position was not eliminated, and that she was replaced by a nonpregnant employee.  The burden thus shifts to Defendants to articulate a legitimate, non-discriminatory basis for Plaintiff's termination.

Defendants argue that, although they needed no reason to terminate her, as she was a probationer subject to dismissal "effective[] immediately with written notice and without right of appeal to the board," 1.7.11.11 NMAC, Plaintiff  was terminated for her "protracted absences without leave."[5]   Doc. 96 at 14.  According to Defendants, Plaintiff "was not on approved leave during most days in August 2007."  *Id.*  Defendants note that, even as to non-probationary employees, the Rules provide that "absence without leave" constitutes "just cause" for termination.  1.7.11.10 NMAC.  The Notice of Termination issued to Plaintiff indicated that she was being terminated for "abandonment of job," which, under the Administrative Manual then in effect at DoIT, is defined as "absence without leave for five consecutive days."

The Court agrees that "protracted absences without leave" or "abandonment of job" constitutes a legitimate, non-discriminatory basis for termination.  Accordingly, the burden shifts back to Plaintiff to show a genuine dispute of material fact as to whether Defendants' proffered reason for her termination is pretextual, or unworthy of belief.

Plaintiff disputes that she "abandoned" her job, or was absent without leave during August 2007.  According to Plaintiff, she complied with the relevant policies during her

---

[5]Although an employee at will may be terminated without cause, she is still entitled to the protections of Title VII and the NMHRA.  Accordingly, while the Rules may have permitted Defendants to terminate Plaintiff without a reason, in order to defeat Plaintiff's discrimination claims, Defendants must articulate a legitimate, non-discriminatory basis for Plaintiff's termination.

absences by calling and/or emailing one or more of her supervisors on a regular basis.  Plaintiff

provided a detailed affidavit in which she states that she "emailed, used cell phones and land

lines to call in sick to [her] supervisors, Elisa Storie and Michael Martinez and did this to cover

every single day [she] was away from the office."  Doc. 105, Ex. 1 at ¶ 7.  Plaintiff also

presented cell phone records for August 2007 documenting telephone calls to DoIT.  Doc. 94,

attachment to Ex. A.  Additionally, there is an email to Rudolph from Storie in which she

reported that Plaintiff "did contact me via phone one day and sent me e-mails and a couple of

voice mails.  I did not keep track of the dates."  Doc. 94, Ex. L.

    The parties thus have presented considerable conflicting evidence regarding the

circumstances of Plaintiff's absences.  The conflicting evidence concerning whether Plaintiff

properly reported her absences creates a genuine issue of material fact as to whether Plaintiff

was terminated for being absent without leave, thus abandoning her job.  *See Plotke*, 405 F.3d at

1104.  Because Plaintiff has met her burden of demonstrating a genuine issue of material fact as

to whether Defendants' proferred reason for her termination is pretextual, summary judgment for

Defendants on Plaintiff's discrimination claims is precluded.  *Id.* at 1108.  Defendants' motion

for summary judgment as to Counts I and II of the Second Amended Complaint thus must be

denied.

   **C.**    Plaintiff's FMLA Claims Against DoIT

    Employees are authorized under 29 U.S.C. Section 2617(a) to bring an action to recover

damages for violations of Section 2615.  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d

955, 960 (10th Cir. 2002).  Courts have recognized two theories for recovery on FMLA claims

under Section 2615: interference and retaliation.  *Id.*  The interference theory arises from Section

2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the

20

exercise of or the attempt to exercise, any right provided in this subchapter." *Id.* The retaliation theory arises from Section 2615(a)(2), which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Id.*

In Count IV, Plaintiff alleges FMLA claims against DoIT under both the interference theory and the retaliation theory, alleging that DoIT: (1) interfered with her attempt to exercise her FMLA rights by failing to accept her FMLA forms; and (2) terminated her in retaliation for her request to take FMLA leave. Doc 64 at ¶¶ 48-49. Defendants move for summary judgment on both Plaintiff's interference claim and her retaliation claim. Plaintiff moves for summary judgment on her interference claim.

> 1.    Plaintiff's Interference Claim

To establish an FMLA interference claim, the plaintiff must show that: (1) she was entitled to FMLA leave, (2) some adverse action by the employer interfered with her right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of her FMLA rights. *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159-60 (10th Cir. 2009). Interference with FMLA rights is a violation "regardless of the employer's intent." *Id.* at 1160. Plaintiff argues that the undisputed facts establish each element of an interference claim. Defendants argue that Plaintiff was not entitled to FMLA leave, and that her termination was not related to her attempted exercise of her FMLA rights.

> a.    Plaintiff's Entitlement to FMLA Leave

In order to be entitled to FMLA leave, a plaintiff must, *inter alia*, have "been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave." 29 C.F.R. § 825.110(a)(2). To determine if the hours requirement

has been met, courts "examine the principles for calculating hours of service established under the Fair Labor Standards Act ("FLSA")."  *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008).  "The determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA. . . .  Any accurate accounting of actual hours worked under FLSA's principles may be used." 29 C.F.R. Section 825.110(c).  While it is the plaintiff's burden to show that she is entitled to FMLA leave, s*ee Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004), if the "employer does not maintain an accurate record of hours worked by an employee . . . the employer has the burden of showing that the employee has not worked the requisite hours."  *Staunch*, 511 F.3d at 630.

Plaintiff argues that she worked 1,808.89 hours during the 12-month period immediately preceding July 20, 2007, and thus that she meets the hours requirement.  Doc. 109 at 5.[6]  In support of her position, Plaintiff submits an affidavit of her attorney who calculated Plaintiff's hours by reviewing Plaintiff's official time records maintained by the State.  Doc. 105, Ex. 12.

---

[6]Plaintiff further argues that Defendants should be estopped from challenging her entitlement to FMLA leave because Defendants, by their actions, led Plaintiff to believe that she was eligible, or in the alternative, that Defendants should be deemed to have waived the defense of ineligibility.  Doc. 105 at 17-22.  Plaintiff's estoppel claim fails, because equitable estoppel requires detrimental reliance, and Plaintiff has presented no evidence that she "changed her position" in reliance on the belief that her leave would be FMLA-protected.  *See Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 557-58 (6th Cir. 2009); *Fryman v. West Telemarketing, L.P.*, No. 06-CV-327, 2007 WL 1691112, *3 (N.D. Okla. June 4, 2007).  To the contrary, Plaintiff was absent because of an unforeseen medical emergency, rather than foreseen medical care that could have been scheduled based on her FMLA eligibility.  Her absence began before she requested FMLA forms or even inquired whether she could "get some time for her leave."  Plaintiff's waiver claim also fails, as the question of whether Plaintiff was entitled to FMLA leave is an essential element of Plaintiff's claim, rather than an affirmative defense.  *See White v. Graceland College Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. 07-2319, 2008 WL 4148602, *5 (D. Kan. Sept. 4, 2008).  Accordingly, Defendants did not waive the defense of eligibility when they did not specifically plead it in their answer.  *Mitan v. BRCSLC, Inc.*, No. 2:09-CV-363, 2010 WL 5300898, *1 (D. Utah Dec. 20, 2010).

Specifically, Plaintiff's attorney states that she reviewed "each time record for the relevant pay period," which time records include a section denominated "FMLA Eligible Hours Worked." *Id.* at ¶ 5. Plaintiff's attorney added up the amount of eligible FMLA hours earned for each pay period. A "representative sample" of the time records is attached as an exhibit to the affidavit. Doc. 105, Ex. 1.

On the other hand, Defendants argue that Plaintiff does not meet the hours requirement, as she worked only 1,180.9 hours during the 12-month period immediately preceding July 20, 2007, the date as of which she requested FMLA leave. Doc. 96 at 15. In support of their position, Defendants attach an affidavit of Rudolph,[7] who implicitly argues that the State's time records were not accurately maintained. Specifically, she claims that the hours set forth therein do not include several hours of leave that Plaintiff took but did not enter into the "SHARE system."[8] Doc. 110, Ex. A. Rudolph states that she calculated Plaintiff's hours by subtracting from her official hours the number of hours of leave that she took but did not record.

Given the parties' respective burdens and the Court's responsibility to look at the facts in the light most favorable to the non-moving party on each party's motion for summary judgment, the Court is not convinced that either party has established, as a matter of law, its position as to the number of hours Plaintiff actually worked. Rather, the Court finds that the conflicting evidence submitted by the parties is sufficient to create a genuine issue of material fact as to whether Plaintiff worked the requisite hours to entitle her to FMLA leave. *See Shaw v. Total*

---

[7]The Court refers only to the Rudolph affidavit attached to Defendants' reply brief, not the Rudolph affidavit attached to Defendants' moving brief, which is the subject of Plaintiff's motion to strike, discussed below.

[8]Defendants do not explain what the "SHARE system" is.

*Image Specialists, Inc.*, No. 2:07-cv-00717, 2009 WL 369817, *4; (S.D. Ohio Feb. 12, 2009);

*Sutherland v. Goodyear Tire & Rubber Co.*, 446 F. Supp. 2d 1203, 1209-10 (D. Kan. 2006);

*Lane v. Harborside Healthcare-Westwood Rehab. & Nursing Ctr.*, No. Civ. 01-050, 2002 WL

1674184, *10 (D.N.H. July 16, 2002).

> b.  The Relationship of Plaintiff's Termination to the Exercise of Her
> FMLA Rights

An employer can defend an interference claim by showing that "the dismissal would

have occurred regardless of the employee's request for or taking of FMLA leave."  *DeFreitas*,

577 F.3d at 1160.  Accordingly, the Court must examine whether Plaintiff's "firing was *related*

*to* her taking leave, and whether she would have been fired anyway, regardless of leave."  *Id.* at

1160 (emphasis in original).  "Whenever termination occurs while the employee is on leave, that

timing has significant probative force."  *Id.*; *see also Smith*, 298 F.3d at 961 ("The timing of

Smith's termination, [which occurred during leave,] also indicates a causal relation between her

FMLA leave and her dismissal.").  Here, Plaintiff was terminated during her absence from work,

an absence for which she had requested FMLA leave.  This evidence is sufficient to show that

her termination was related to her request for FMLA leave.  *See DeFreitas*, 577 F.3d at 1160

(finding termination related to plaintiff's leave where termination occurred one day after plaintiff

told employer she would need six weeks off and could not return sooner).

Defendants, however, argue that Plaintiff was fired because she was absent without

leave, and would have been fired even if she had not requested FMLA leave.  Doc. 96 at 16-17.

Defendants are correct that a "request for an FMLA leave does not shelter [Plaintiff] from the

obligation . . . to comply with [DoIT]'s employment policies, including its absence policy."

*Bones*, 366 F.3d at 878.  As discussed above, however, there is a genuine issue of fact as to

whether Plaintiff was terminated because she did not comply with the relevant absence policies.

Accordingly, this case is distinguishable from *Bones*, where it was uncontroverted that the

plaintiff did not comply with her employer's absence policy on the dates for which she was

terminated.  *Id.*  Here, a reasonable jury could reject Defendants' assertion that Plaintiff was

fired for her failure to comply with relevant absence policies.  *See DeFreitas*, 577 F.3d at 1160.

For this reason, a genuine issue of fact exists as to whether Defendants would have fired Plaintiff

regardless of her request for FMLA leave.  *Id.* at 1161.

c.    <u>Genuine Issues of Fact Remain in Dispute</u>

Genuine issues of fact remain in dispute as to two elements of Plaintiff's interference

claim, namely, whether she was entitled to FMLA leave, and whether her termination was

related to the attempted exercise of her FMLA rights.  Accordingly, both parties' motions for

summary judgment on Plaintiff's FMLA interference claim must be denied.

2.    <u>Plaintiff's Retaliation Claim</u>

Retaliation claims under the FMLA are subject to the *McDonnell Douglas* burden

shifting analysis.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F 3d 1164, 1170 (10th Cir.

2006).  At the first stage of this analysis, the plaintiff has the burden of establishing a prima facie

case of retaliation.  *Id.*  If the plaintiff makes a prima facie case, the burden shifts to the

defendant to "offer a legitimate, non-retaliatory reason for the employment action."  *Id.*  The

burden then shifts back to the plaintiff to demonstrate that the defendant's preferred reason is

pretextual.  *Id.*

To state a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in

"a protected activity;" (2) the defendant "took an action that a reasonable employee would have

found materially adverse;" and (3) "there exists a causal connection between the protected

25

activity and the adverse action." *Id.* at 1171.  In deciding whether Plaintiff has shown a causal connection between her request for FMLA leave and her termination, the "critical inquiry" is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 1171.  The Tenth Circuit has "repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to justify an inference of retaliatory motive." *Id.* (citation omitted).

Defendants argue that Plaintiff cannot make a prima face case of retaliation because she cannot show a causal connection between her termination and her request for FMLA leave.  Doc. 96 at 17.  In support of this argument, Defendants note that DoIT sent Plaintiff the Notice of Termination on August 28, 2007, three days before DoIT received the completed medical certification form from Plaintiff's doctor requesting approval for FMLA leave retroactive to July 20, 2007.  *Id.*  Defendants argue that DoIT could not have retaliated against Plaintiff "for an action she had not taken." *Id.*

Defendants' argument takes too narrow a view of what constitutes a "request" for FMLA leave.  In order to "request" FMLA leave, the law does not require an employee to specifically ask for FMLA benefits.  *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001).  To the contrary, "[a]n employee need not expressly assert rights under the FMLA or even mention the FMLA." *Id.*  The employer's duties under the FMLA are triggered so long as "the employer is on notice that the employee might qualify for FMLA benefits." *Id.*  Here, Defendants were on notice that Plaintiff might qualify for FMLA benefits when she first told them she was pregnant in July 2007.  Plaintiff first requested the necessary paperwork to secure FMLA benefits on August 9, 2007.  Moreover, Plaintiff specifically requested that her absence be covered by

26

FMLA leave benefits in an email to Martinez on August 21, 2007.  Doc. 94, Ex. K.  Under these circumstances, the Court finds that Plaintiff began asserting her FMLA rights prior to the date on which Defendants sent her the Notice of Termination.

Plaintiff was terminated during her absence from work, an absence for which she had requested FMLA leave.  This evidence is sufficient to show a causal connection between her request for FMLA leave and her termination.  *See Metzler*, 464 F.3d at 1171-72 (termination four weeks after plaintiff's request for FMLA leave was "very close in time" and thus established third element of prima facie case of retaliation).  Plaintiff thus has established a prima facie case of retaliation.  Defendants have not offered a legitimate, non-retaliatory reason for Plaintiff's termination.  Accordingly, Defendants' motion for summary judgment on Plaintiff's FMLA retaliation claim must be denied.

D.    Plaintiff's Constitutional Claims Against the Individual Defendants

In Count III, Plaintiff alleges that Individual Defendants Rudolph, Storie and Martinez acted under color of state law to deprive her of her constitutional rights in violation of 42. U.S.C. Section 1983.  Doc. 64 at ¶ 40.  Specifically, Plaintiff claims that these defendants: (1) violated her right to due process by terminating her employment, in which she had a protected property interest, without prior notice or an opportunity to be heard; and (2) violated her right to equal protection of the laws because her gender/pregnancy was a motivating factor in their decision to terminate her.  *Id.* at ¶¶ 41-42.  In Count VI, Plaintiff similarly alleges under Section 1983 that Individual Defendant Lucero violated her right to due process by changing her position as a non-probationary, "transfer" employee, in which she had a protected property interest, to that of a probationary, "rehire" employee.  *Id.* at ¶¶ 57-58.  Defendants move for summary judgment on both of these counts on the basis of qualified immunity.

27

1.     Doctrine of Qualified Immunity

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In order for the law to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  This does not mean that "there must be a case presenting the exact fact situation at hand." *Murrell*, 186 F.3d at 1251.  Rather, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n light of pre-existing law the unlawfulness must be apparent." *Woodward v. City of Worland*, 977 F.2d 1392, 1398 (10th Cir. 1992) (citation omitted).  Once the defendant raises a qualified immunity defense, the plaintiff has "the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988).

2.     Due Process Claims

Both of Plaintiff's due process claims against the Individual Defendants are premised on her contention that she had a "protected property interest" in continued employment as a non-probationary employee.  Doc. 107 at 13, 17-18.  As set forth above, however, the Court has determined as a matter of law that Plaintiff had no implied contract as a non-probationary

28

employee, and thus was a probationer on the effective date of her termination.  As a probationer, the Rules subjected Plaintiff to dismissal "effective immediately with written notice and without right of appeal to the board."  1.7.11.11 NMAC.  The Tenth Circuit has squarely held that, under New Mexico law, a probationary employee has no property interest in continued employment. *Shubbuck v. Frost*, 197 F.3d 21, 1997 WL 39331, *2 (10th Cir. Jan. 30, 1997) (citing *Richardson v. City of Albuquerque*, 857 F.2d 727, 732-33 (10th Cir. 1988)).  Accordingly, Plaintiff had no property interest that would give rise to a claim of violation of due process.[9]

Plaintiff thus has failed to carry her burden of showing that the Individual Defendants' conduct violated the law.  Accordingly, Defendants' motion to dismiss that portion of Count III that alleges that Rudolph, Storie and Martinez violated her right to due process, along with the entirety of Count VI must be granted.

### 3.   Equal Protection Claim

Plaintiff contends that Rudolph, Storie and Martinez violated her right to equal protection because her pregnancy was a motivating factor in their decision to terminate her.  Doc. 107 at 15.  The elements for a plaintiff's prima facie case in a discrimination suit are the same whether brought under Title VII or Section 1983.  *Scott v. Minco*, 393 F. Supp. 2d 1180, 1191 (W.D. Okla. 2005) (citing *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)); *see also Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 n.1 (10th Cir. 1990) ("[T]he requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional or statutory

---

[9]Plaintiff also alleges that she was not afforded an adequate "name clearing" hearing. Doc. 64 at ¶ 41.  Plaintiff, however, has a liberty interest in her good name and reputation only to the extent that it affects a protected property interest in continued employment.  *See Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994).  As Plaintiff had no protected property interest in continued employment, Plaintiff would be unable to show, as she must, "false stigmatizing statements entangled with [her] interest in employment." *Id.* at 481.

violations.").  As set forth above, Plaintiff has shown all of the elements necessary to prove a

prima facie case of pregnancy discrimination.  While Defendants have articulated a legitimate,

non-discriminatory basis for her termination, Plaintiff has presented sufficient evidence to create

a genuine issue of material fact as to whether Defendants' preferred reason for her termination is

pretextual.  By the same token, Plaintiff has presented sufficient evidence from which a

reasonable juror could find that the Individual Defendants deprived her of her right to equal

protection.

Additionally, the law prohibiting employment decisions on the basis of gender/pregnancy

was clearly established at the time of Plaintiff's termination.  The United States Supreme Court

has held that the Equal Protection Clause confers a "federal constitutional right to be free from

gender discrimination" at the hands of governmental actors.  *Davis v. Passman*, 442 U.S. 228,

234-35 (1979).  This Supreme Court precedent is "broad enough to prohibit state actors from

engaging in intentional conduct designed to impede a person's career advancement because of

her gender."  *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994); *see also Scott*, 393 F. Supp.

2d at 1193 n.6 ("Not surprisingly, Defendants do not argue that a reasonable person would not

have known that firing Scott or causing her to be fired because of her gender would violate her

clearly established right to equal protection under the Fourteenth Amendment.").  Accordingly, a

reasonable official in the position of the Individual Defendants would have understood that

terminating Plaintiff violated her clearly established federal constitutional rights, provided, of

course that they took those actions because of her pregnancy.  *See Lindsey*, 29 F.3d at 1386.

Because Plaintiff thus has satisfied both prongs of the test necessary to overcome summary

judgment on the basis of qualified immunity, Defendants' motion to dismiss that portion of

Count III that alleges that Rudolph, Storie and Martinez violated her right to equal protection

must be denied.

III.     Plaintiff's Motion to Strike

Plaintiff moved to strike certain documents filed by Defendants in support of their motions for summary judgment.  Doc. 106.  Specifically, Plaintiff asked the Court to strike:  the affidavit of Ken Giles, on the grounds that he was never properly disclosed as a witness and that he purports to provide expert opinions;  paragraph 10 of the Rudolph affidavit attached to DoIT's Memorandum in Support of Summary Judgment, Doc. 96-5, on the grounds that the statements contained therein lack foundation, contain hearsay and impermissibly raise an issue of Plaintiff's eligibility for FMLA never previously raised by Defendants; and a January 31, 2007 letter from HSD, on the grounds that Defendants never disclosed this letter and that its production is prejudicial.

In deciding the motions before it, the Court did not reference or rely upon any of the documents Plaintiff seeks to strike.  Accordingly, the Court will deny as moot Plaintiff's motion to strike, without prejudice to renewal before trial as a motion *in limine*.  *See Ortiz v. San Miguel County*, 955 F. Supp. 1338, 1347 (D.N.M. 1996).

IV.     Plaintiff's Motion for Sanctions

Finally, pursuant to Federal Rules of Civil Procedure 37(c)(1) and 26(g)(3), Plaintiff seeks sanctions against Defendants for alleged abuses in the discovery process.  Doc. 89.  Specifically, Plaintiff claims that Defendants improperly withheld certain portions of Plaintiff's personnel file maintained by HSD.  *Id.* at 2.  As a result, Plaintiff was unable to review certain relevant documents prior to her deposition.  *Id.* at 4.  Accordingly, Plaintiff seeks to bar Defendants from using Plaintiff's deposition responses for impeachment purposes at trial.  Plaintiff also seeks to recover the costs associated with her efforts to obtain these documents.

31

Rules 26(g) and 37(c) permit, and perhaps require, the Court to impose sanctions for abuses of the discovery process.  Of particular relevance here, Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Plaintiff contends that Defendants' withholding of the HSD personnel records constituted a violation of Rules 26(a) and (e).  Accordingly, in apparent reliance on Rule 37(c), Plaintiff argues that Defendants are prohibited from using this information and any related testimony, at trial. Doc. 89 at 8.[10]

In analyzing Plaintiff's claim for exclusion under Rule 37(c), the Court need not reach the issue of whether Defendants' conduct in the discovery process violated Rule 26(a) or (e).  Even if Defendants' conduct violated these rules, the Court finds that their failure to provide the HSD personnel records in a timely manner was harmless.  In the Tenth Circuit, the existence of harm is gauged by considering: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice, (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

First, Plaintiff has not shown that the belated disclosure of the HSD personnel records resulted in appreciable surprise or prejudice. Although Plaintiff places great weight on the fact

---

[10] In seeking relief under Rule 37(c)(1), Plaintiff asks the Court to exclude not only the information alleged to have been withheld in violation of Rule 26, but, more broadly, any "evidence regarding Plaintiff's attendance issues during her employment at HSD and about her use of FMLA leave at HSD."  Doc. 89 at 5.  Even if the Court found a violation of Rule 26, neither the text of Rule 37, nor the supporting case law provides any support for such a sweeping exclusion.

that she was unable to review the HSD personnel documents prior to her deposition, the subjects

addressed in the HSD personnel documents, including Plaintiff's attendance and work

performance issues while employed at HSD, are ones with which Plaintiff had a unique

familiarity even prior to the deposition.  In fact, one of the primary documents that Plaintiff

alleges to have been improperly withheld is her own letter of resignation from HSD.  The

contents of these documents cannot have come as a surprise to Plaintiff.  *See Lintz v. Am. Gen.*

*Fin. Inc.*, No. Civ.A. 98-2213, 1999 WL 619045, *7 (D. Kan. Aug. 2, 1999) (failure of

defendants to produce to plaintiff document prior to her deposition held harmless where "[s]he

knew of its existence and could not have been surprised by its contents").

Moreover, any prejudice that did result from the belated disclosure of the HSD

documents is inherently curable.  If, as set forth in the motion, Plaintiff's primary concern is the

potential impeachment value of her deposition testimony, the fact that she was unable to review

relevant records prior to her testimony only serves to weaken, if not eliminate the impeachment

value of the testimony.  Similarly, because Defendants provided Plaintiff with the HSD

documents before discovery ended, there is no potential that a trial in this matter will be

disrupted by the belated production.  Finally, there are no allegations of bad faith or willfulness

here.

Defendants' failure to produce the HSD documents any sooner than they did thus caused

no harm and, accordingly, does not warrant exclusion of those documents at trial, or any other

sanction available for discovery abuses.  Plaintiff's motion for sanctions thus must be denied.

## CONCLUSION

As a matter of law, Plaintiff had no implied contract as a non-probationary employee.

Accordingly, Plaintiff's allegations that Defendants failed to afford her progressive discipline or

notice and an opportunity to be heard prior to her termination fail to state a claim of breach of implied contract or breach of the implied covenant of good faith.  Count V of the Second Amended Complaint thus must be dismissed.

Plaintiff has demonstrated a genuine issue of material fact as to whether Defendants' proferred reason for her termination is pretextual.  Accordingly, summary judgment for Defendants on Plaintiff's discrimination claims is precluded.  Defendants' motion for summary judgment as to Counts I and II of the Second Amended Complaint thus must be denied.

Genuine issues of fact remain in dispute as to two elements of Plaintiff's FMLA interference claim, namely, whether she was entitled to FMLA leave, and whether her termination was related to the attempted exercise of her FMLA rights.  Accordingly, both parties' motions for summary judgment on Plaintiff's FMLA interference claim must be denied.

Plaintiff has established all of the elements of a prima facie case of retaliation, including a causal connection between her request for FMLA leave and her termination.  Defendants have not offered a legitimate, non-retaliatory reason for Plaintiff's termination.  Accordingly, Defendants' motion for summary judgment on Plaintiff's FMLA retaliation claim must be denied.

 Plaintiff has failed to show that the Individual Defendants's conduct violated her due process rights.  Accordingly, Defendants' motion to dismiss that portion of Count III that alleges that Rudolph, Storie and Martinez violated her right to due process, along with the entirety of Count VI must be granted.

Plaintiff has presented sufficient evidence from which a reasonable juror could find that the Individual Defendants deprived her of her right to equal protection.  The law prohibiting employment decisions on the basis of gender/pregnancy was clearly established at the time of

Plaintiff's termination.  Accordingly, Defendants' motion to dismiss on the basis of qualified

immunity that portion of Count III that alleges that Rudolph, Storie and Martinez violated her

right to equal protection must be denied.

In deciding the motions before it, the Court did not reference or rely upon any of the

documents Plaintiff seeks to strike.  Accordingly, the Court denies as moot Plaintiff's motion to

strike.

Defendants' failure to produce documents in a more timely manner caused no harm to

Plaintiff and, accordingly, does not warrant exclusion of those documents at trial.  Plaintiff's

motion for sanctions thus must be denied.

**IT IS THEREFORE ORDERED** that:  Defendants' Motion for Partial Judgment on the

Pleadings [Doc. 120] is well-taken and will be **GRANTED**; Defendants' Motion for Summary

Judgment as to DoIT [Doc. 95] is not well-taken and will be **DENIED**; Plaintiff's Motion for

Partial Summary Judgment on Count IV [Doc. 93]  is not well-taken and will be **DENIED**;

Defendants' Motion for Summary Judgment as to Individual Defendants Pearl Rudolph, Elise

Storie, Michael Martinez and Gloria Lucero [Doc. 97] is well-taken in part and will be

**GRANTED in part** and **DENIED in part**; Plaintiff's Motion to Strike [Doc. 106] will be

**DENIED as moot**; and Plaintiff's Motion for Sanctions Against Defendants for Discovery

Abuse [Doc. 89] is not well-taken and will be **DENIED.**

DATED this 30th day of September, 2011.

_____
MARTHA VAZQUEZ
United States District Court Judge

<u>Attorneys for Plaintiff</u>:

      Linda G. Hemphill, Esq.
      Paul W. Grace, Esq.
      Diane M. Garrity, Esq.

<u>Attorney for Defendants</u>:

      M. Karen Kilgore, Esq.